UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOHN BRUCCOLERI,

                Plaintiff,                    MEMORANDUM AND ORDER
                                                  17-CV-7443

   - against -


JOHN GANGEMI,

                Defendant.
---------------------------------------------------------x
GLASSER, Senior United States District Judge:

       Plaintiff John Bruccoleri ("**Plaintiff**") alleges that he retained John Gangemi ("**Gangemi**"), an attorney and "long-time" friend of his father, to provide various legal services for him between approximately July 2010 and September 24, 2014, when Gangemi's services were terminated. (ECF No. 1). Plaintiff brought this action on December 21, 2017, claiming that Gangemi defrauded him, provided poor or inaccurate legal advice, and improperly collected fees from Plaintiff and from the estate of Plaintiff's late mother. Although the complaint does not explicitly name a cause of action, construed liberally it may be read as asserting, at a minimum, claims of fraud and legal malpractice. *See Ahmed v. Bank of America*, 2010 WL 3824168, at *1 (E.D.N.Y. Sept. 24, 2010). Gangemi passed away during the pendency of these proceedings, and Plaintiff moved on July 12, 2018 for substitution of Barbara Gangemi (**"Barbara"** or **"Defendant"**), his surviving spouse, as defendant. (ECF No. 10). The motion was granted on July 16, 2018. (7/16/2018 Electronic Order, Modified 7/17/2018).

       Presently before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), (2), (5) and (6) on various procedural and substantive grounds, to wit: (i) lack of diversity jurisdiction on the grounds that Plaintiff is a citizen of New York; (ii)

1

insufficient service of process upon Gangemi; (iii) that Plaintiff's complaint fails to state a claim; (iv) that Barbara was improperly substituted as a party before she was personally served with notice of Plaintiff's substitution motion; (v) that Plaintiff's claims did not survive Gangemi's death; and (vi) that Barbara is not the proper party to be substituted.[1] Additional factual background and procedural history, where relevant to each issue, will be provided below.

**I.**

Defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's verified complaint, the contents of which are sworn by him to be true, avers that he was "a citizen and resident of the State of Florida" as of December 21, 2017, when the complaint was filed. (Compl. ¶ 2). However, Defendant claims that Plaintiff is actually a citizen of New York. It is undisputed that Gangemi was a New York citizen. (Compl. ¶ 3). It appears that Barbara, the current defendant, is also a New York citizen. (ECF No. 12; ECF No. 16-10 (**"Barbara Aff."**) ¶ 4-5).

Under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1332(a), this Court lacks subject matter jurisdiction unless the parties are citizens of different states. For purposes of diversity, a person's citizenship is determined by his or her domicile. "Domicile has been described as the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998) (citations and quotation marks omitted). "At any given time, a person has but one domicile." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (citing *Rosario v. INS*, 962 F.2d 220, 224 (2d Cir. 1992)). In order for an individual domiciled in

---

[1] Defendant also moves for Plaintiff's claim for punitive damages to be stricken. As Plaintiff consents to this branch of the motion (ECF No. 17 at 4), it will be granted.

one State to change his or her domicile to another, the individual must both (1) take up "residence" in the new State and (2) have an "intention to remain there." *Linardos*, 157 F.3d at 948; *see also Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there").

The record shows that until at least May 2017, Plaintiff was a long-time resident of New York (ECF No. 16-2 ¶¶ 18-19; ECF No. 16-8). Plaintiff maintained a driver's license bearing a New York address as recently as March 2018, four months after the complaint was filed. (ECF No. 16-9). Other than Plaintiff's sworn averment that he is a citizen of Florida, the only evidence of his Florida citizenship is a warranty deed showing that he purchased a property in Valrico, Florida in May 2017 (ECF No. 17 at 7). Plaintiff's attorney, Gerald J. McMahon, submitted a personal declaration stating that Plaintiff "moved" to Florida in May 2017 (ECF No. 17 at 3); however, the declaration does not state the basis for McMahon's knowledge of this fact.

"The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issued by referring to evidence outside of the pleadings, such as affidavits . . . ." *Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). Normally, a person's sworn declaration of their domicile is *prima facie* proof of domicile for diversity purposes. *See CP Investors Group, LLC v. Deutsch*, 2014 WL 1327975, at *4 (S.D.N.Y. Apr. 3, 2014); *Rafter v. Liddle*, 2006 WL 2255093, at *6 (S.D.N.Y. Aug. 4, 2006). Where such person's domicile is called into question, however, it may be supported or rebutted

by "factors including voting registration, employment, current residence, location of real and personal property, location of spouse and family, driver's license, automobile registration, tax payment and addresses, and location of a person's bank account and physician." *Techno-TM, LLC v. Fireaway, Inc.*, 928 F.Supp.2d 694, 697 (S.D.N.Y. 2013).

Here, the weight of the evidence shows that Plaintiff was a New York domiciliary until at least May 2017, and is inconclusive as to his domicile after that date, including on December 21, 2017, when the complaint was filed. The record is consistent with Plaintiff having transferred domicile to Florida. However, it is also consistent with Plaintiff having simply purchased a second home in Florida while maintaining New York as his "true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Linardos*, 157 F.3d at 948; *see also Galva Foundry Co. v. Heiden*, 924 F.2d 729 (7th Cir. 1991) (holding that the district court did not clearly err in finding that a defendant who lived in Illinois "all his life" and "bought a second home in Florida, which he and his wife have used as a vacation home," was a citizen of Illinois for diversity purposes). Notably, Plaintiff has submitted no evidence, such as employment records, bank records, tax records, or voter registration, indicating that he intended to set up domicile in Florida, nor has he submitted documentation that he has sold his New York residence.

Therefore, at this juncture, the record is too thin to permit the Court to rule on Defendant's Rule 12(b)(1) motion. Where, as here, there exist significant issues of fact as to diversity of citizenship, best practice is to allow the parties to develop the evidentiary record. *See United Food & Commercial Workers Union, Lopes v. Jetsetdc, LLC*, 4 F.Supp.3d 238 (D.D.C. 2014); *Eastport Ventures, Ltd. v. Kariman*, 2007 WL 783028, at *5 (E.D. Va. Mar. 13, 2007). A "district court retains considerable latitude in devising the procedures it will follow to ferret out

the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (quoting *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).

Accordingly, the Court will set down an evidentiary hearing on the issue of subject matter jurisdiction as set forth more fully in the conclusion of this opinion.

**II.**

Defendant moves to dismiss pursuant to Rule 12(b)(5) for insufficient service of process.[2] As with subject matter jurisdiction, questions of fact preclude the Court from deciding whether service of process was properly effected in this case.

"[I]n considering a motion to dismiss pursuant to [Rule] 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler North America Holding Corp.*, 191 F.Supp.2d 382, 387 (S.D.N.Y. 2002). The plaintiff bears the burden of proving those facts that rendered service of process adequate. *See Hernandez v. Mauzone Home Kosher Products of Queens, Inc.*, 2013 WL 5460196, at *4 (E.D.N.Y. Sept. 30, 2013); *Hertzner v. U.S. Postal Service*, 2007 WL 869585, at *3 (E.D.N.Y. Mar. 30, 2013). "Even if a defendant eventually acquires actual notice of the lawsuit, actual notice alone will not sustain the service … when there has not been compliance with the prescribed conditions of service." *Bankers Trust Co. of California, N.A. v. Tsoukas*, 303 A.D.2d 343, 344 (N.Y. App. Div. 2d Dept. 2003).

---

[2] Defendant also moves to dismiss pursuant to Rule 12(b)(2). A review of Defendant's papers, however, reveals no basis for this branch of the motion other than insufficient service of process. It is well-settled that the proper vehicle to dismiss an action for insufficient service of process is Rule 12(b)(5), not Rule 12(b)(2). *See Koulkina v. City of New York*, 559 F.Supp.2d 300, 310 n. 9 (S.D.N.Y. 2008). Accordingly, the Court construes Defendant's motions pursuant to Rules 12(b)(2) and (5) as merely being asserted under Rule 12(b)(5).

5

Service of process may be effectuated by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," subject to exceptions not applicable here. Fed. R. Civ. P. 4(e)(1). New York law permits service of process (1) "by delivering the summons within the state to the person to be served" or (2) "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and then mailing the summons to the last known address or actual place of business of the person to be served. CPLR § 308(1), (2). However, where service by these methods "cannot be made with due diligence," New York law permits what is sometimes called nail-and-mail service of process "by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served" and mailing the summons to the last known address or actual place of business of the person to be served. CPLR § 308(4).

Gangemi's law office was located at 9920 Fourth Avenue, Suite 307, in Brooklyn, New York. (ECF No. 16-2 ¶ 2). The affidavit of service states that the process server attempted to effectuate service at "9920 4th Avenue, Brooklyn, NY 11209" on February 14, February 27, and March 1, 2018. (ECF No. 7). Upon being unable to find Gangemi or a "person of suitable age and discretion," the server purportedly effected nail-and-mail service at "9920 4th Avenue, Brooklyn, NY 11209" on March 1, 2018. (ECF No. 7). The affidavit of service makes no mention of Gangemi's suite number. Hence, there is an ambiguity in the record: where, precisely, on the premises of this building was service attempted—was it at suite 307, in a lobby, or somewhere else? And, for purposes of CPLR § 308(4), does it matter?

Analogy may be made to the somewhat more common case where a server attempts to effectuate service upon a doorman or front desk in the lobby of a multi-unit residential dwelling. As a general rule, the "actual dwelling place" or "usual place of abode" of a tenant in a multiple dwelling has been held to be the apartment of the tenant. The lobby does not comprise part of a person's residence unless access to the person's actual apartment is limited, in which case service upon a doorman in the lobby constitutes service at the person's residence under CPLR § 308(2). *See F. I. duPont, Glore Forgan & Co. v. Chen*, 41 N.Y.2d 794, 797 (N.Y. 1977) ("[I]f a process server is not permitted to proceed to the actual apartment by the doorman or some other employee, the outer bounds of the actual dwelling place must be deemed to extend to the location at which the process server's progress is arrested"); *cf. Dinicu v. Groff Studios Corp.*, 215 A.D.2d 323 (N.Y. App. Div. 1st Dept. 1995) (finding service of process by delivery to other tenants insufficient "where there was clear access to the defendants' apartment at all times"). There is no reason why the rule should be different for multi-story office buildings. Therefore, the Court holds that, for purposes of CPLR § 308(2) and (4), where a person to be served has his or her place of business in an office building and the process server lacks access to their suite, the person's place of business "may be deemed to extend to the location at which the process server's progress is arrested." *F. I. duPont*, 41 N.Y.2d at 797.

Therefore, the relevant factual inquiry in this case is whether the process server had access to the interior of the building, and specifically to suite 307. If so, then service of process was only proper if she attempted with "due diligence" to serve someone at suite 307 pursuant to CPLR § 308(2) and, failing that, affixed the summons and complaint to the door of that suite. If she did not have access to the suite, then Gangemi's place of business would extend to the last point at which her progress was arrested.

7

Under New York law, a traverse hearing is required where, as here, genuine issues of fact exist as to whether service was properly made. *See US Flour Corp. v. Certified Bakery, Inc.*, 2012 WL 728227, at *3 (E.D.N.Y. Mar. 6, 2012); *see also CSC Holdings, Inc. v. Fung*, 349 F.Supp.2d 613, 618 (E.D.N.Y. Dec. 20, 2004) (concluding that a traverse hearing was required where defendant claimed that the building at which service was attempted was not his residence within the meaning of CPLR § 308(4)). In this case, a hearing will be required to establish both the point at which the process server's progress was arrested and the location on the premises where service was actually attempted.[3]

Accordingly, the Court will set down an evidentiary hearing on the issue of service of process as set forth more fully in the conclusion of this opinion.

### III.

Defendant moves to dismiss pursuant to Rule 12(b)(6). Because there exist questions of material fact concerning Article III jurisdiction, *see* Discussion I, *supra*, it is unclear whether the Court may proceed to the merits—even though this might obviate the need for further factfinding and permit the case to be dismissed rather expeditiously. The question of when, if ever, a Court may avoid a difficult question of Article III jurisdiction in order to dispel a case on relatively simple merits grounds is an unsettled one. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S.

---

[3] The facts to be developed at the hearing will also be relevant to whether the process server acted with the requisite "due diligence" under CPLR § 308(4). Courts have generally held that three attempts at a residence or place of business, on non-consecutive dates and at times when the defendant would be expected to be there, are sufficient. *See Weifang Xinli Plastic Products v. JBM Trading Inc.*, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014); *Gross Foundation, Inc. v. Goldner*, 2012 WL 6021441, at *4 (E.D.N.Y. Dec. 4, 2012). Applying this standard, the process server's efforts in this case likely constituted due diligence. Nevertheless, because further factfinding will be required in any event on the issue of Gangemi's "actual place of business," the Court will reserve decision on the issue of due diligence until after the hearing has concluded.

83, 93-101 (1998); *but see Seale v. I.N.S.*, 323 F.3d 150, 154-157 (1st Cir. 2003); *Center for Reproductive Law and Policy v. Bush*, 304 F.3d 183, 193-195 (2d Cir. 2002). Rather than set off what may be a fraught constitutional tripwire, this Court is of the view that Plaintiff should be given an opportunity to amend the complaint in order to cure the numerous defects that Defendant has identified. (ECF No. 16-1, at 10-11). Should Plaintiff fail to amend his complaint, the Court may decide whether dismissal on the merits without a finding of subject matter jurisdiction is nevertheless appropriate pursuant to *Bush*, 304 F.3d at 193-195.

Accordingly, pursuant to Rule 15(a)(2), the Court *sua sponte* grants Plaintiff leave to amend the complaint on the terms set forth at the conclusion of this opinion. The Court will reserve decision with respect to Defendant's Rule 12(b)(6) motion.

## IV.

Finally, Barbara argues that the Substitution Order, substituting her as the defendant in this action pursuant to Rule 25, was improperly entered.

1. Procedural history underlying the Substitution Order

On April 23, 2018, Gangemi's attorney, Susan Mauro, docketed a letter informing the Court that Gangemi had passed away. (ECF No. 9). The letter did not designate a representative or successor to be substituted as defendant. On June 20, 2018, McMahon requested that Mauro provide the names and addresses of the executor and/or representative of Gangemi's estate. (ECF No. 10, at 4). On June 26, 2018, Mauro replied that she had no such information, as she did not represent Gangemi's family in connection with any probate proceedings or otherwise. (ECF No. 10, at 4-5).[4] McMahon made inquiry, in person and by telephone, of the Kings County Surrogate

---

[4] At some point in August 2018, Mauro was formally retained by Barbara Gangemi to represent her in these proceedings. (ECF Nos. 13, 14).

9

Clerk's Office and discovered that no will of Gangemi was submitted for probate. (ECF No. 10, at 5). On July 12, 2018, Plaintiff moved to substitute Barbara as the defendant pursuant to Rule 25(a)(1). (ECF No. 10) (the **"Rule 25 Motion"**).

The Rule 25 Motion was granted four days later, on July 16, 2018. (7/16/2018 Electronic Order, Modified 7/17/2018) (the **"Substitution Order"**). Plaintiff's motion papers indicated in a caption that a copy of the Rule 25 Motion was addressed to Barbara "By Personal Service." (ECF No. 10, at 5). However, Barbara was never personally served with notice of the motion until July 26, 2018, ten days *after* the motion was granted. (ECF No. 12). Although the Rule 25 Motion had been publicly docketed via ECF since July 12, 2018, there is no indication that Barbara had actual notice of the motion or an opportunity to object before the motion was granted.

It was not until her October 19, 2018 motion to dismiss that Barbara submitted, for the first time, her written objections to the already-granted Rule 25 Motion. Specifically, Barbara argues that (i) Plaintiff's claims were extinguished upon Gangemi's death, (ii) Barbara was not a proper party to be substituted, and (iii) the Substitution Order was improperly entered before Barbara was personally served with notice of the Rule 25 Motion. Concurrently, Barbara submitted a two-page personal declaration reciting that, at the time of his demise, Gangemi's assets consisted solely of his and Barbara's marital home, held as tenants by the entirety, and a joint bank account, held with Barbara with a right of survivorship. (Barbara Aff. ¶¶ 4-6). Because both assets passed to Barbara upon Gangemi's death, the declaration states that Gangemi's estate contains no assets against which a judgment could be enforced. (Barbara Aff. ¶¶ 5-6, 9). The declaration also asserts that Gangemi left a last will and testament, "but it has not

been submitted to probate because there are currently no assets in his estate." (Barbara Aff. ¶ 8). The declaration does not say who, if anyone, Gangemi named as executor of his estate.

2. Legal standard

Rule 25(a)(1), which governs the substitution of parties after a party's death, provides, in relevant part:

> **(1) *Substitution if the Claim is Not Extinguished.*** If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

The manner in which such a motion must be served is set forth in Rule 25(a)(3) as follows:

> **(3) *Service.*** A motion to substitute, together with a notice of hearing, must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4. A statement noting death must be served in the same manner. Service may be made in any judicial district.

3. The Substitution Order should be vacated for insufficient service of process

The Court agrees with Barbara that the Substitution Order was improperly entered, as she had not been served in accordance with Rule 4 at the time of its entry. *See* Fed. R. Civ. P. 25(a)(3).

Rule 4 permits service upon an individual personally. *See* Fed. R. Civ. P. 4(e)(2)(A); *see also* Fed. R. Civ. P. 4(e)(1); CPLR § 308(1). It does not, however, permit electronic service via the Court's electronic case filing system. *See Mares v. U.S.*, 2014 WL 2531964, at *3 (W.D.N.Y. Jun. 5, 2014); *cf. Collier v. Boymelgreen Developers*, 2007 WL 1452915, at *1 n. 1 (E.D.N.Y. May 17, 2007) (observing that electronic service via ECF may suffice under Local Civil Rule 5.2 of this District). Because "Rule 4 is 'jurisdictionally rooted,' " *Giles v. Campbell*, 698 F.3d 153,

159 (3d Cir. 2012) (quoting *Ransom v. Brennan*, 437 F.2d 513, 517 (5th Cir. 1971)), courts have held that service upon a non-party pursuant to Rule 4 is necessary to obtain personal jurisdiction to substitute them as a defendant under Rule 25(a)(1). *See id.* at 158-159; *Ransom*, 437 F.2d at 516-519; *Crichlow v. Fischer*, 2015 WL 678725, at *5 (S.D.N.Y. Feb. 17, 2015).

Here, the Substitution Order was improperly granted, as it was entered before Barbara was personally served with notice of the motion. *See Giles*, 698 F.3d at 159; *Ransom*, 437 F.2d at 516-519; *Crichlow*, 2015 WL 678725, at *5. Although the Rule 25 Motion was docketed via ECF on July 12, 2018 (ECF No. 10), this did not constitute service on Barbara as a non-party under Rule 4. *See Mares*, 2014 WL 2531964, at *3; *see also Ransom*, 437 F.2d at 518-519 (service of notice of the motion upon decedent's counsel under Rule 5, where the record did not show that counsel was attorney for the decedent's executrix, did not constitute service upon the executrix under Rule 4 so as to satisfy the service requirement of Rule 25(a)(3)).

Where a motion to substitute has been improperly granted due to failure to comply with Rule 25(a)(3), the proper remedy is usually vacatur of the substitution order without prejudice to re-file and properly serve the motion, rather than outright dismissal. *See Giles*, 698 F.3d at 159; *Ransom*, 437 F.2d at 521; *see also Sheppard v. Beerman*, 822 F.Supp. 931, 942 (E.D.N.Y. 1993) (noting that "the district court retains the power to vacate its own orders"), *rev'd on other grounds*, 18 F.3d 147 (2d Cir. 1994). This case is somewhat unique, however, as Barbara *was* ultimately served pursuant to Rule 4, albeit after the Substitution Order was already entered. Accordingly, while personal jurisdiction was lacking at the time the Substitution Order was entered, no such defect currently exists. Under the circumstances, requiring Plaintiff to refile his motion and serve it upon Barbara a second time would be an extreme exercise in futility. The

better course is to simply vacate the Substitution Order and deem the Rule 25 Motion to be pending.

4. The Court reserves decision regarding Plaintiff's Rule 25 Motion

For a timely motion to substitute to be granted, the Court must find that (1) the claims survive the decedent's death, *i.e.*, the claims have not been "extinguished," and (2) the party sought to be substituted is a "proper party." Fed. R. Civ. P. 25(a)(1); *see Gusler v. City of Long Beach*, 2015 WL 3796328, at *1 (E.D.N.Y. Jun. 18, 2015).

In determining whether a claim is "extinguished" within the meaning of Rule 25(a)(1) in a diversity action, courts must look to the law of the State whose substantive law governs the cause of action. *See Official Committee of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, 2017 WL 9485707, at *3 (E.D.N.Y. Aug. 3, 2017) ("Where a litigant's claim has its origins in state law, then it follows that the claim [will] survive the litigant's death if the 'applicable state law creates a right of survival' ") (quoting *English v. Murphy-Lattanzi*, 2015 WL 630248, at *2 (E.D.N.Y. Feb. 12, 2015)). In this case, New York law is perfectly clear: "No cause of action for injury to person or property is lost because of the death of the person liable for the injury." N.Y. E.P.T.L. § 11-3.2(a)(1). Plaintiff's claims sound in fraud or legal malpractice and therefore constitute "injury to … property;" therefore, they survive under New York law. *See English*, 2015 WL 630248, at *3 ("Here, Plaintiff's claims for fraud, conversion and breach of fiduciary duty all involve injuries to Plaintiff's property. Therefore, under Section 11-3.2 [of the N.Y. E.P.T.L.], all of Plaintiff's claims survive Defendant's death"). Accordingly, Plaintiff's claims were not "extinguished" upon Gangemi's death.

Barbara appears to argue that the claim cannot survive against her because Gangemi's estate presently contains no assets. However, this objection misunderstands the purpose of Rule

25(a)(1), which is to provide a procedural mechanism ensuring that plaintiff's claims, otherwise survivable as a matter of substantive law, do not abate because of the technical absence of a proper party. The sufficiency of a decedent-defendant's estate is not a precondition for substitution under Rule 25(a)(1). *See Natale v. Country Ford Ltd.*, 287 F.R.D. 135 (E.D.N.Y. 2012) (granting motion to substitute defendant's executor as defendant under Rule 25, notwithstanding the fact that the approximate total value of defendant's estate was $0).

The next question is whether Barbara is a "proper party" for substitution. Rule 25 does not define what it means for someone to be a "proper party." Over the years, courts have generally held that a "proper party" must be (1) a "representative … lawfully designated by state authority to represent the decedent's estate," *English*, 2015 WL 630248, at *3 (quoting *Roe v. City of New York*, 2003 WL 22715832, at *2 (S.D.N.Y. Nov. 19, 2003)); *see also Mallonee v. Fahey*, 200 F.2d 918, 919 (9th Cir. 1952) (Douglas, J.), (2) "the primary beneficiary of an already distributed estate," *Tankleff v. County of Suffolk*, 2016 WL 3162059, at *2 (E.D.N.Y. Jun 2, 2016) (quoting *In re Baycol Products Litig.*, 616 F.3d 778, 784 (8th Cir. 2010)); *see also Natale*, 287 F.R.D. at 137-139; *Gronowicz v. Leonard*, 109 F.R.D. 624, 626 (S.D.N.Y. 1986), (3) the person "named in a will as the executor of the decedent's estate, even if the will is not probated," *Tankleff*, 2016 WL 3162059, at *2 (quoting *Baycol*, 616 F.3d at 784); *see also McSurely v. McClellan*, 753 F.2d 88, 97-99 (D.C. Cir. 1985), *cert. denied*, 474 U.S. 1005 (1985), or (4) "the primary beneficiary of an unprobated intestate estate which need not be probated," *Tankleff*, 2016 WL 3162059, at *2 (quoting *Baycol*, 616 F.3d at 784); *see also Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F.Supp. 713, 716-717 (S.D.N.Y. 1993).

Where, as here, the decedent has left a will that has not been submitted for probate, and which is not likely to be probated in the foreseeable future, the "proper party" will generally be

14

the person (if any) named in the decedent's will as the executor of his or her estate, per category three above. *See McSurely*, 753 F.2d at 97-99. Here, because the record does not indicate who, if anyone, Gangemi named as the executor of his estate, the Court cannot identify the proper party at this time. Accordingly, the Court will reserve decision on Plaintiff's substitution motion so that such person may be identified on the record.

V.

For the foregoing reasons, the Court enters the following order:

The Substitution Order (7/16/2018 Electronic Order, Modified 7/17/2018) is hereby **VACATED** and Plaintiff's Rule 25 Motion (ECF No. 10) is deemed pending;

The Court **RESERVES DECISION** with respect to the Rule 25 Motion so that the "proper party," as specified in this opinion, may be identified on the record;

The Court construes Defendant's motion to dismiss under Rule 12(b)(1), (2), (5) and (6) (ECF No. 16) as a motion to dismiss solely under Rule 12(b)(1), (5), and (6), and, so construed, **RESERVES DECISION** with respect to the motion, except that Defendant's motion to strike Plaintiff's claim for punitive damages from the complaint is **GRANTED**;

The Court *sua sponte* **GRANTS** Plaintiff leave to amend his complaint on or before **Thursday, March 7, 2019**; and

Contingent upon the substitution of a proper party pursuant to Rule 25, the Court shall set down an evidentiary hearing on the issues of subject matter jurisdiction and service of process at a date and time to be specified when the Court orders substitution of the proper party.

SO ORDERED.

Dated: Brooklyn, New York
February 7, 2019

/s&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;
I. Leo Glasser          U.S.D.J.